**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

Case No.: 21-cv-62276-BB

CHARITY PEARROW, as Personal Representative of the Estate of MARINA RALPH, a deceased minor,

    Plaintiff,

v.

ESA P PORTFOLIO L.L.C., a foreign limited liability company d/b/a EXTENDED STAY AMERICA PREMIER SUITES; and ESA P PORTFOLIO OPERATING LESSEE LLC, a foreign limited liability company d/b/a EXTENDED STAY AMERICA PREMIER SUITES,

    Defendants.

**DEFENDANTS' MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM AND BRIEF IN SUPPORT**

    COME NOW Defendants ESA P. PORTFOLIO L.L.C. and ESA ESA P PORTFOLIO OPERATING LESSEE LLC ("Defendants") and, pursuant to Fed. R. Civ. P. 12(b)(6), hereby file this Motion to Dismiss and Brief in Support, showing the Court as follows:

**I.**

**INTRODUCTION**

    Plaintiff, Charity Pearrow, tragically lost her minor daughter, 16-year-old Marina Ralph, on October 4, 2019. Marina had run away from home numerous times in the past, staying gone

for weeks at a time, and, on October 1, 2019, she did so again.¹  Marina's body was discovered three days later in room 334 of the Extended Stay Hotel located at 1401 McNab Road, Pompano Beach, Florida (the "Subject Hotel").²  Marina had died of an overdose of cocaine and fentanyl, and Plaintiff concedes her daughter's death may have been a suicide.  However, what occurred in the time immediately *preceding* Marina's death is a mystery.  Plaintiff's Complaint is silent as to where Marina was when she took the drugs that eventually killed her, the day/time Marina arrived at the Subject Hotel or what she did or whom she saw while there.  There are no contentions that any hotel staff saw or interacted with Marina or even knew she was on the property.  To the contrary, Plaintiff alleges that Marina entered the hotel from a side entrance, avoiding the lobby and the hotel clerk altogether.

Plaintiff has brought negligence/premises liability claims against the Defendants, claiming that, because the Subject Hotel was the scene of various prior crimes, the occurrence of additional crime on the premises was foreseeable and, thus, the Defendants owed Marina a duty to use reasonable care to guard against it.  However, Plaintiff does *not* allege that Marina died as the result of any crime perpetrated against her.  All that is clear from Plaintiff's Complaint is that Marina somehow made her way to room 337 of the Subject Hotel where she subsequently died via an overdose of illegal narcotics.  Thus, Plaintiff has failed to plead causation (*i.e.,* she does not allege any facts to suggest that Marina's death was caused by Defendants' negligence), which is a necessary element of her premises liability claims.  Additionally, since Marina consumed the lethal drugs herself, Plaintiff's allegations necessarily reveal that Marina's knowledge of the "hazardous

---

¹ All of the facts contained in this Motion to Dismiss are taken from Plaintiff's Complaint and the Defendants make no representations regarding their accuracy or veracity.  Of course, in passing on this Motion to Dismiss, the Court must assume Plaintiff's allegations are true.

² Plaintiff contends that Defendants owned and/or operated the Subject Hotel.

condition" complained of was superior to that of the Defendants.  For these reasons, Plaintiff's Complaint fails to properly state a claim upon which relief may be granted and dismissal is required.

## II.

## PLAINTIFF'S FACTUAL ALLEGATIONS

*A.    Marina Ralph.*

Plaintiff's daughter, Marina Ralph, died of a drug overdose on October 4, 2019; she was sixteen.  *See* Plaintiff's Complaint ("*Compl.*"), ¶¶ 86 – 97.  Plaintiff concedes that Marina voluntarily took the dangerous drugs that killed her (a combination of cocaine and fentanyl), but Plaintiff does not know whether the overdose was a mistake or suicide.  *Id.*, p. 2 ("Whether the lethal cocktail of narcotics found in Marina's system was accidental or intentional …").  Marina's short life was a difficult one.  Her father abandoned her at a young age, she became pregnant at thirteen, and, after terminating her pregnancy, she was sexually assaulted.  *Id.*, ¶¶ 22 – 33.

Marina's relationship with her mother was contentious.  In high school, Marina repeatedly ran away from home, and, when she did, she would stay gone for several days at a time.  *Id.*, ¶¶ 34 – 41.  Plaintiff contends that, during this period, Marina met a girl (identified only as "Z") who "recruited Marina into the world of human sex trafficking and commercial sexual exploitation." *Id.*, ¶¶ 34 – 45.  Plaintiff claims that Marina would still communicate with her "while [Marina was] on a runaway" or during the times Marina was home and that Marina told her that Marina would stay with a friend and/or other girls at a hotel in Pompano Beach.  *Id.*  Plaintiff does not identify this Pompano Beach hotel and alleges that Marina refused to name it.  *Id.*, ¶¶ 43 – 48.  Despite this knowledge, Plaintiff would later drop Marina off at a bus station and give her money so Marina could travel back to Pompano Beach.  *Id.*, ¶ 46.

Plaintiff claims that, during one of Marina's "runaways" in August of 2019, Marina told her (via phone call or text) that Marina was fearful of several men at "the hotel". *Id.*, ¶¶ 47 – 62. Plaintiff also contends that, during this time, Marina's "traffickers" operated out of the Subject Hotel and posted photos of Marina on sites to initiate commercial sex.[3] *Id.* Plaintiff offered to call the police on Marina's behalf, but Marina declined, saying she was afraid the men would harm her or her mother. *Id.* Several days later, Marina returned home. *Id.* While there, Plaintiff bought Marina mace and gave Marina a new phone. *Id.*

Marina left again a few days later, on August 29, 2019. *Id.*, ¶¶ 63 – 75. Approximately two weeks after that, on September 12, 2019, Marina called Plaintiff asking "for help" and stating: "I just want out. I can't handle it." *Id.* Marina returned home that night, and Plaintiff took her to the hospital, where Marina was admitted for a period of six days. *Id.* While there, Marina told her doctors that she "was taking a variety of drugs". *Id.* Marina refused to talk to the police, but did ask her mother if she could go to a new school. *Id.*, 76 – 80. Plaintiff enrolled Marina at a new school in Fort Lauderdale, but, on September 28, 2019, shortly after beginning classes, Marina ran away yet again. *Id.* Marina came home for the last time on September 30 or October 1, 2019. *Id.*

By 6:00 p.m. on October 1, 2019, Marina had run away again. *Id.*, ¶ 80. Plaintiff contends that she texted with Marina a few times on October 2, 2019, but that was the last contact she had with her daughter. *Id.*, ¶¶ 84 – 85. Marina was found dead inside room 334 of the Subject Hotel on October 4, 2019, but the specific allegations concerning Decedent's presence on and death at the premises are scant, being limited to the following:

---

[3] Plaintiff does not specifically allege that Marina was ever trafficked at or engaged in commercial sex at the Subject Hotel.

- On October 4, 2019, someone called the Broward County Sheriff's Office to report someone (presumably Marina) overdosing in a room at the hotel;

- Deputies responded and found Marina alone and dead inside room 334;

- Marina was naked from the waist down with a "reddish dried substance near her genitals" and "small red defects" on the back of her neck;

- The room's interior, bathroom door was broken;

- Marina's body had been moved post-death; and

- Marina died of an overdose of cocaine and fentanyl and may have committed suicide.

*Id.*, p. 2, ¶¶ 86-97.

**B.     Room 334.**

Plaintiff's Complaint contains several allegations related to the rental and use of room 334, but none of those allegations offer any more insight into what happened to Marina. Plaintiff contends:

- On September 30, 2019, a female (someone other than "Z" and other than Marina), rented rooms 334 and 326 using a stolen credit card and ID;

- The rooms were rented for a period of five days; and

- Sometime on October 3 or 4, 2019, a hotel employee was made aware of suspicious activity between rooms 326 and 334, which consisted of two males going back and forth between the rooms.

*Id.*, ¶¶ 98 – 114. Plaintiff does not allege when Marina arrived at the hotel, nor does Plaintiff allege that Marina was ever even seen by any hotel staff. To the contrary, Plaintiff contends that

Marina was uninvolved in the rental of the room and did not pass through the lobby of the hotel (past the front desk) to arrive at room 334.  *Id.*, ¶¶ 109 – 113.  Marina entered the hotel "alone" via one of the side or rear entry/exit doors.  *Id.*, ¶¶ 109 – 113.  And, pretermitting whether two individuals travelling between hotel rooms rented by the same individual is "suspicious", Plaintiff has not alleged how (or even whether) these individuals interacted with Marina or were involved in her death.

C.     *Sex Trafficking.*

Over the next several paragraphs of her Complaint (*id.*, ¶¶ 116 – 48), Plaintiff makes various, general allegations about the evils of human trafficking and steps the hotel industry "should" take in light of same.  None of these allegations are specific to Marina, the Defendants or the Subject Hotel.

D.     *The Subject Hotel.*

Plaintiff contends that the Subject Hotel is located in a high-crime area, "known for transiency" and had over 250 calls for police service in the 18 months prior to Marina's death, including calls for missing persons, overdoses, child abuse/neglect, narcotics violations, domestic disturbances, assault, breaking/entering and trespassing.  *Id.*, ¶¶ 149 – 53.  Plaintiff further contends that Defendants had actual knowledge "that criminal activity was being perpetrated by both registered guests and non-registered visitors".  *Id.*, ¶ 155.  The hotel has entrance/exit doors on every side (*i.e.,* North, South, East and West), and Plaintiff alleges that the doors on the East and West are "routinely opened without the use of any key" via being "routinely propped open", allowing unfettered entrance to the interior of the building.  *Id.*, pp. 156 – 62.  Plaintiff claims that the Defendants were aware that the doors "were persistently propped open".  *Id.*, ¶ 163.  Plaintiff also contends that "cameras in several interior hallways were either obscured or that visibility

through the monitors was dangerously compromised" and that Defendants were aware of same. *Id.*, ¶165.  Plaintiff does not contend that Marina's ingress to the Subject Hotel was capable of being captured via any video camera.

## III.

## PLAINTIFF'S CLAIMS

Plaintiff has brought a single negligence/premises liability claim, against each Defendant, under Florida's Wrongful Death Act.  *Id.*, ¶¶ 175 – 222.[4]  Plaintiff contends that Defendants owed a non-delegable duty to their guests, invitees and the public, including Marina, to exercise ordinary care to maintain the Subject Hotel in a condition "reasonably safe for use".  *Id.*, ¶ 177.  "In particular", Plaintiff contends, "Defendant[s] had a duty to take such precautions as were reasonably necessary to protect its invitees, guests, and the public, including Marina Ralph from harm attendant to criminal conduct that was reasonably foreseeable."  *Id.*, ¶ 178.  Plaintiff avers that Defendants were aware of prior criminal activity on and around the Subject Hotel and "it was reasonably likely that such criminal acts would be perpetrated on the Defendant's guests, invitees, and the public unless the Defendant took appropriate measures to provide reasonable security for such individuals."  *Id.*, ¶ 179.  Plaintiff also alleges that "the acts perpetrated upon Marina Ralph were reasonably foreseeable to the Defendant[s] and the Defendant[s] were in a superior position to appreciate the hazards and take necessary steps to prevent harm to invitees, guests, and the public, including … Marina Ralph."  *Id.*, ¶ 182.

Plaintiff also contends that the Defendants knew or should have known:

---

[4] Plaintiff's Complaint contains two counts – one against each Defendant – which mirror each other.

- That hotels were utilized by human trafficking ventures to commercially sexually exploit minor children;

- That such ventures operated by "arraigning for 'Johns' to travel to the location; and, further, that the venture's success depended upon its ability to bring girls and 'Johns' in without detection or with as little detection as possible";

- That "unfettered access to the interior of the hotel through exterior doors from a parking lot was reasonably likely to lead to the entrance of underage girls and/or 'Johns' through the unsecured doors"; and

- That minors exploited by human traffickers "are likely to be given narcotics in an isolated environment in which the minor has no genuine ability to help themselves".

*Id.*, ¶¶ 186 – 91.

Plaintiff claims that the Defendants breached their duty to exercise reasonable care through various failures, which can be generally described as failure to provide adequate security. *Id.*, ¶¶ 183, 192. Plaintiff contends that Defendants' negligence "directly led to the criminal acts which caused Marina's injuries and death", but Plaintiff does not specify what, if any, crime was perpetrated against Marina. *Id.*, ¶ 195.

## IV.

## ARGUMENT

### A. *Standard of Review.*

> To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. An unadorned the-defendant-unlawfully harmed me accusation does not suffice.

*Berber v. Wells Fargo Bank, N.A.*, 2018 WL 10436236, *1 (S.D. Fla. 2018) (*citing* ***Ashcroft v. Iqbal***, 556 U.S. 662, 663, 678 (2009)) (additional citations and internal punctuation omitted).  In reviewing a motion to dismiss, the Court must accept the plaintiff's factual allegations as true, construing them in a light most favorable to plaintiff and drawing all reasonable inferences in the plaintiff's favor.  ***Id.***, (*citing* ***Pielage v. McConnell***, 516 F.3d 1282, 1284 (11th Cir. 2008)).  "However, the Court need not accept an inference where there is 'an obvious alternative explanation.'"  ***Id.*** (*citing* ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 567 (2006)).  ***Iqbal*** suggested that Courts considering a motion to dismiss adopt a two-prong approach:  First eliminate any allegations that are merely legal conclusions; Second, assume the veracity of any remaining well-pleaded factual allegations and then determine if they plausibly give rise to a claim for relief.  ***Iqbal***, 556 U.S. at 679.  And, "[w]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recover under some viable legal theory."  ***Fin. Sec. Assur., Inc. v. Stephens, Inc.***, 500 F.3d 1276, 1282-83 (11th Cir. 2007).

**B.     *Plaintiff Failed to Plead Causation, an Essential Element of Her Claims.***

"A negligence claim has four elements: (1) a duty by defendant to conform to a certain standard of conduct, (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff."  ***Bartsch v. Costello***, 170 So.3d 83, 86 (Fla. 4th DCA 2015) (*citing* ***Clay Elec. Co-Op., Inc. v. Johnson***, 873 So.2d 1182, 1185 (Fla. 2003)).  A premises liability claim "is a negligence claim with the added elements of possession/control of the premises, and notice of the dangerous condition."  ***Oliver v. Winn-Dixie Stores, Inc.***, 291 So.3d 126, 128 (Fla. 4th DCA 2020) (internal cites omitted); *see also* ***Haynes v.***

*Lloyd*, 533 So.2d 944, 946 (Fla. 5th DCA 1988) ("A plaintiff asserting a cause of action based on premises lability must, among other things, plead and prove that the defendant possessor had actual [or constructive] knowledge of the dangerous condition before it caused the injury in question …"). Thus, causation is a necessary element of any premises liability claim, which must be properly plead. *Id.*, *see also* ***Las Olas Holding Co. v. Demella***, 228 So.3d 97, 102 (Fla. 4th DCA 2017) (internal cites omitted) ("The plaintiff must also plead that the [defendant's negligence] was a proximate cause of the [plaintiff's injury].") And, "to state a cause of action for negligence ***in a wrongful death action***, a plaintiff is required to allege … that the breach was a legal or proximate cause ***of the decedent's death*** …" ***Fritsch v. Rocky Bayou Country Club, Inc.***, 799 So.2d 433, 435 (Fla. 1st DCA 2001) (emphasis added, internal cites omitted).

Plaintiff contends that a general risk of criminal activity made the Subject Hotel an "unreasonably dangerous property". ***Compl.***, p. 16. More specifically, Plaintiff claims that the property is in a high-crime area, located "in proximity to two highly trafficked thoroughfares" and that there were dozens of "calls for police service" to the hotel for various criminal conduct prior to Marina's death. *Id.*, ¶¶ 149 – 53. Plaintiff further alleges that Defendants were aware of this "criminal activity occurring on [their] premises and of the propensity for criminal activity to be committed on its premises." *Id.*, ¶¶ 154- 55. And, Plaintiff states that Defendants, therefore, had a duty to take reasonable precautions to protect "its invitees, guests, and the public, including Marina Ralph from harm attendant to criminal conduct that was reasonably foreseeable" and that Defendants failed to exercise reasonable care. *Id.*, ¶¶ 178, 183. What Plaintiff has ***not*** alleged, however, is that any dangerous condition on the property ***caused*** Marina's death.

Plaintiff does not contend that Marina was attacked, assaulted or killed at the Subject Hotel. Plaintiff goes on at length with allegations that guests and the general public could enter or exit

the Subject Hotel without a key, but she does not contend that any trespasser accessed the premises and made improper contact with Marina.  While she makes various, general statements regarding sex trafficking, Plaintiff nowhere alleges that Marina was trafficked at the Subject Hotel or at the time of her death or that her death was caused by human trafficking.  At one point, Plaintiff states that the crime at issue "herein" is a "crime[] involving narcotics".  *Id.*, ¶ 183(b)).  But, again, Plaintiff fails to allege that Marina was a victim of any crime involving narcotics on the property; she does not contend that Marina bought, sold or even consumed drugs at the Subject Hotel.  Moreover, even if such averments were made, Plaintiff concedes that Marina's overdose was accidental or intentional, which means that Marina *willingly* took the drugs that caused her overdose.  As such, the factual allegations of Plaintiff's Complaint establish that Marina's death was not caused by any dangerous condition on the property at all; it was caused by Marina's own hand.  Dismissal is therefore required.

C.  *Plaintiff's Complaint Establishes that Marina Possessed Superior Knowledge of the Danger that Caused her Death.*

In Florida,

> [l]iability for negligence in failing to maintain premises in a reasonably safe condition, or in failing to warn of existing dangers, must be predicated on the occupant's superior knowledge or means of obtaining knowledge concerning the danger.  In order to recover, a plaintiff must show either that the occupant or proprietor had actual notice of the condition or that the dangerous condition existed for such a length of time that in the exercise of ordinary care the occupant should have known of it and taken action to remedy it or guard the plaintiff from harm therefrom.  No liability can attach where it is not shown that the owner or proprietor had actual or constructive notice of the dangerous condition.

***Winn-Dixie Montgomery, Inc. v. Petterson***, 291 So.2d 666, 668 (Fla. 1st DCA 1974).  "This is especially true where the dangerous condition is traceable to the acts of person other than himself and his employees."  *Id.*

Here, it is clear from Plaintiff's Complaint that Marina was participating in the crime and consuming the drugs that would ultimately kill her. Thus, it is undeniable that Marina possessed superior knowledge of the dangerous condition alleged by Plaintiff. Along these lines, ***Rios v. Junco*** is informative. In ***Rios***, Drug Enforcement Agency agents were shot and injured during an operation at a hotel "when an undercover operation went sour". ***Rios v. Junco***, 487 So.2d 331, 332 (Fla. 3rd DCA 1986). The agents sued the hotel, "alleging that [the owner] had actual knowledge that numerous illegal drug transactions were taking place on their premises but negligently failed to prevent them." *Id.* The trial court, however, dismissed the plaintiffs' complaint, and the Court of Appeals affirmed:

> For numerous – independently dispositive reasons – including the threshold absence of any actionable premises liability at all, *see Vermont Mutual Ins. Co. v. Conway*, 358 So.2d 123 (Fla. 1st DCA 1978) (no liability when plaintiff and land owner have equal knowledge of danger), the lack of any proximate relationship between the alleged negligence and the incident in question, e.g., *Cone v. Inter County Telephone & Telegraph Co.*, 40 So.2d 148 (Fla. 1949); *Pinkerton-Hays Lumber Co. v. Pope*, 127 So.2d 441 (Fla. 1961), and the application of the fireman's rule, *Smith v. Markowitz*, 486 So.2d 11 (Fla. 3rd DCA 1986) and cases cited, it is self-evident that no cause of action existed under the circumstances as a matter of law …

*Id.* The same result should be reached here.

## V.

## <u>CONCLUSION</u>

Based on the above, Defendants respectfully request this Court enter GRANT their Motion to Dismiss and DISMISS Plaintiff's claims against them.

Respectfully submitted,

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

/s/ *Jose O. De La Cruz*
Heather M. Calhoon, Esq.
Florid Bar No.: 495573
Jose O. De La Cruz, Esq.
Florida Bar No.: 1005862
3350 Virginia Street, Suite 500
Miami, Florida 33133
Telephone:     (305) 455-9500
Facsimile:     (305) 455-9501
E-Mail:          hcalhoon@wwhgd.com
                      jdelacruz@wwhgd.com
                      malvarez@wwhgd.com
                      dmallqui@wwhgd.com
                      ahayes@wwhgd.com

***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 22, 2021, a true and correct copy of the forgoing was electronically filed with the Clerk of the Court using CM/ECF. Copies of the forgoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Jose O. De La Cruz*
Jose O. De La Cruz