**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

Case No.: 21-cv-62276-BB

CHARITY PEARROW, as Personal Representative of the Estate of MARINA RALPH, a deceased minor,

    Plaintiff,

v.

ESA P PORTFOLIO L.L.C., a foreign limited liability company d/b/a EXTENDED STAY AMERICA PREMIER SUITES; and ESA P PORTFOLIO OPERATING LESSEE LLC, a foreign limited liability company d/b/a EXTENDED STAY AMERICA PREMIER SUITES,

    Defendants.

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE
IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**

COME NOW Defendants ESA P. PORTFOLIO L.L.C. and ESA P PORTFOLIO OPERATING LESSEE LLC ("Defendants") and, pursuant to Fed. R. Civ. P. 12(b)(6), hereby reply to Plaintiff's Response in Opposition to the Defendant's Motion to Dismiss, showing the Court as follows:

**A.** *Plaintiff did not Plead Proximate Cause.*

Plaintiff's Opposition relies heavily, if not entirely, upon the legal conclusions alleged in her Complaint. But, as the Court is aware, the viability of any claim turns upon a claimant's *factual* allegations. "[T]he tenet that a Court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." "[A]n unadorned the-defendant-unlawfully harmed me accusation" does not suffice.

*Berber v. Wells Fargo Bank, N.A.*, 2018 WL 10436236, *1 (S.D. Fla. 2018) (internal cites omitted). Accordingly, in considering a motion to dismiss, the Court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679. Then, the remaining "well-pleaded factual allegations," if any, should be reviewed to determine "whether they plausibly give rise to an entitlement to relief." *Id.*

Plaintiff seems to recognize that causation is an essential element of her negligence claim (*Opp.*, p. 11), but she is incorrect that inferences of causation can take the place of well pleaded facts. Plaintiff is required to include factual assertions for every element of her claim[1], and "the Court need not accept an inference when there is an obvious alternative explanation." *Berber*, *supra*. Put differently, "[t]he plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Hung Kang Huang v. Carnival Corp.*, 909 F.Supp.2d 1356, 1359 (S.D. Fla. 2012).

In this case, when Plaintiff's conclusions are set aside and the factual allegation are laid bare, it is apparent that she has failed to plead any causal connection between the purported actions/inactions of the Defendants and the death of Marina Ralph.

---

[1] It is required "that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) (internal cites omitted); *see also* *Randall v. Scott*, 610 F.3d 701, 707 n 2 (2010) (noting that complaints in all cases must now "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recover under some viable legal theory.") (internal cites omitted).

Certainly, the factual averments contained in Plaintiff's Complaint speak for themselves and are not in dispute. In summary, she contends the following:

- Marina had a history of drug abuse and running away from home. She was involved in sex trafficking, told her mother she was scared of men at "the hotel", but she refused to let her mother call the police or talk to the police herself. Marina came home often, only to run away again. She was last home on September 30 or October 1, 2019, before running away a final time. *Compl.*, ¶¶ 34-80.

- On September 30, 2019, an unidentified woman rented two rooms (334 and 326) at the Subject Hotel for a period of five days, with what turned out to be a stolen credit card and driver's license. *Id.*, ¶¶ 98-103.

- Prior crimes had occurred at the Subject Hotel, which was located in a "high crime area", and the Defendants were aware that criminal conduct had occurred on the premises. *Id.*, ¶¶ 149-55.

- On October 3 or 4, 2019, the front desk clerk was made aware of "suspicious activity between rooms 326 and 334, including but not limited to the fact that there were two unknown males – neither of whom were registered guests – going back and forth between the rooms at odd hours." *Id.*, ¶ 114.

- The Subject Hotel's side and rear entrances were often "propped" open, allowing people to enter without a key. Prior to the morning of October 4, Marina made her way to room 334, alone, without passing through the hotel lobby. *Id.*, ¶¶ 112, 156-61.

- Marina was found dead of an "accidental or intentional" drug overdose on the morning of October 4, 2019, after someone called 911. *Id.*, p. 1, ¶¶ 86-88, 97.

While Plaintiff's Complaint goes on to assert conclusory allegations as to the Defendants' failure to use reasonable care to protect its invitees from foreseeable criminal conduct, Plaintiff fails to allege any facts which causally connect the Defendants' negligence *to Marina's death*.

Take, for example, Paragraphs 192-95 of Plaintiff's Complaint, which are highlighted in her Opposition. There, she contends that the lack of visible or physical deterrents to prevent criminal activity created an "atmosphere which facilitated the commission of crimes against persons, including minors" and that this "atmosphere" was a dangerous condition on the property. But, Plaintiff skips any *factual* allegation as to how or whether these purported deficiencies caused

Marina's death. Instead, she offers the conclusory statement that "the Defendants' negligence directly led to the criminal acts which caused Marina Ralph's injuries and death." As for what "criminal acts" she is referring to and how they were caused by Defendants and, in turn, how they caused Marina's death, Plaintiff's Complaint is silent.

This point is missed entirely in Plaintiff's Opposition. Indeed, in responding to Defendants' argument, Plaintiff is unable to point to any particular factual allegation of causation, instead referring to her Complaint as whole, which, she states "span two hundred and twenty-two paragraphs and thirty-four pages, including ¶¶ 182-196 and ¶¶ 206-220 which set forth myriad specific failures by the hotel which proximately caused Marina's harms and death." ***Opp.***, pp. 10-11. These alleged "failures" range from not having security officers patrol the premises and the failure to maintain video cameras/monitors to deficient lighting and the lack of a "reasonable security plan." ***Compl.***, ¶ 183. Yet, nowhere in her Complaint does Plaintiff, for example, allege that the lack of cameras caused Marina's overdose – there is no contention that she fell victim to some crime that would have been observed. Likewise, with regard to hotel access, Plaintiff does not claim that someone inappropriately accessed the hotel and assaulted Marina. The same is true for additional security or lights; Plaintiff does not allege that Marina's drug use would have been observed (or was even observable) by any patrolling guard who could have intervened or that her overdose was the result of poor illumination. In fact, Plaintiff's Complaint does not state when or how Marina arrived at the hotel (other than to say she was alone and did not pass through the lobby), who she saw while there, what activity she engaged in, whether the drugs she consumed were taken on or off premises, or, if they were taken on site, whether those drugs were already there or carried onto the property by Marina herself.

The dearth of "well-pleaded factual allegations" surrounding Marina's death cannot be overcome through Plaintiff's cursory allegations that said death was *somehow* caused by missing security measures. This is just the sort of "the-defendant-unlawfully harmed me accusation" warned against in **Berber**. **Berber**, *supra*. Accordingly, Plaintiff's claims should be dismissed.

B.   *Marina Ralph's Superior Knowledge.*

As noted above, in reviewing this Motion to Dismiss, the Court is to assume the veracity of a Plaintiff's factual allegations. Moreover, "[d]etermining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the Court to draw on its judicial experience and common sense." **Hung Kang**, 909 F.Supp.2d at 1359 (*citing* **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 679 (2007)). Here, Plaintiff has alleged that Marina Ralph died from an overdose after taking cocaine and fentanyl. Thus, it is established that Marina was uniquely aware of the criminal activity in which she was engaged – consuming illegal narcotics – and that this criminal activity caused her death.[2] Plaintiff's Opposition addresses none of these points.

Instead, Plaintiff again relies upon the conclusions in her Complaint and her mistaken impression that such conclusions must be accepted as true:

> Defendants' contention flatly ignores Plaintiff's allegations to the contrary, which are to be taken as true:
>
> In light of the foregoing, at all material times, the acts perpetrated upon Marina Ralph were reasonably foreseeable to *the Defendant and the Defendant was in a superior position* to appreciate the hazards and take necessary steps to prevent harm to invitees, guests, and the public, including but not limited to Marina Ralph. **Compl.**, ¶ 182.

---

[2] Plaintiff alleges that the "criminal incident" at issue – the one which constituted a dangerous condition and the one which killed Marina – was a "crime[] involving narcotics". **Compl.**, ¶¶ 183(b), 207(b).

***Opp.***, pp. 12-13 (emphasis in the original).  As noted above, however, Plaintiff's conclusory statements as to Defendants' "superior position" are not to be presumed truthful, while her factual allegations must be.  *See **Berber***, ***Ashcroft***, ***Huang Kang***, *supra.*  Plaintiff does not contend that the Defendants even knew Marina was on the property, much less that they were aware that Marina had consumed or was consuming dangerous drugs.  Conversely, Plaintiff's Complaint clearly establishes Marina was directly engaged in taking illegal narcotics, thereby establishing superior knowledge of the hazard that undeniably caused Marina's death.

The cases upon which Plaintiff relies provide basic statements of premises liability law, which is not in dispute.  ***Opp.***, pp. 13-14.  These cases do not address, and Plaintiff's Opposition ignores, the effect of Marina's superior knowledge on her claims.  "It is well settled that the property owner's knowledge of a danger must be superior to that of the invitee in order to create a duty to warn of dangers unknown to the invitee."  ***Storr v. Proctor***, 490 So.2d 135, 136-37 (Fla. 3rd DCA 1986) (*citing **Vermont Mutual Ins. Co. v. Conway***, 358 So.2d 123 (Fla. 1st DCA 1978); ***Somers v. Meyers***, 171 So.2d 598 (Fla. 1st DCA 1965); ***Quinnelly v. Southern Maid Syrup Co.***, 164 So.2d 240 (Fla. 2d DCA 1964)).  While Plaintiff criticizes ***Rios v. Junco***, 487 So.2d 331, 332 (Fla. 3rd DCA 1986) for a lack of "detailed analysis", she does not challenge the accepted concept that liability for negligence in failing to maintain a premises is predicated on the occupant's superior knowledge.[3]  In this case, based on the factual allegations of Plaintiff's Complaint, Marina possessed superior knowledge the "crime[] involving narcotics" in which she took part and which

---

[3] ***Rios***, discussed in Defendants' Opposition, was a case where a Motion to Dismiss was granted on similar premises liability claims, because the plaintiff law enforcement agents were aware of the criminal activity they were attempting to thwart on the property.  ***Rios***, 487 So.2d at 332 ("For numerous – independently dispositive reasons – including the threshold absence of any actionable premises liability at all, *see **Vermont Mutual Ins. Co. v. Conway***, 358 So.2d 123 (Fla. 1st DCA 1978) (no liability when plaintiff and land owner have equal knowledge of danger) …").

resulted in her tragic and untimely death. *Compl.*, ¶ 183(b). Accordingly, Plaintiff's claims should be dismissed.

C.  ***Defendants References were not Misleading.***

In the penultimate section of her Opposition, Plaintiff contends that Defendants misrepresented Plaintiff's factual allegations. *Opp.*, pp. 15-16. First, Plaintiff argues that Defendants made several incorrect statements as to Marina's drug use, arguing that Plaintiff did ***not*** concede that Marina consumed the drugs herself, that she voluntarily took the drugs, that she willingly took the drugs, that her death may have been a suicide, that her death was caused by her own hand, or that she was participating in the crime (*i.e.,* illicit drug use) that killed her. *Id.*, p. 15. In response, Defendants would only point to the allegations in Plaintiff's Complaint, wherein Plaintiff alleges that Marina was known to take a "variety of drugs" (***Compl.***, ¶ 74), that the "lethal cocktail of narcotics found in Marina's system was accidental or intentional" (*id.*, p. 1), that Marina died from said "lethal cocktail" (*id.*), and which contain no claim that Marina was murdered, assaulted or forced to consume drugs.[4] To the extent Plaintiff seeks to have the Court infer foul play, it is not appropriate for the Court make such an inference over an "obvious alternative explanation." ***Berber***, ***supra***.

Next, Plaintiff takes aim at Defendants' position that Plaintiff nowhere alleged Marina was trafficked at the Subject Hotel. *Opp.*, p. 16. But, again, Defendants would direct the Court to Plaintiff's allegations. Certainly, Plaintiff's Complaint contains many allegations and statements related to human sex trafficking. Most of these allegations, however, are general statements and

---

[4] Plaintiff also argues that, since Marina was a minor, she is "legally incapable of consent and cannot be deemed to have 'participated' in the trafficking conduct …" *Opp.*, p. 15. The Defendants, however, do not argue that Marina willingly engaged in trafficking.

contain no factual averments against the Defendants (***Compl.***, ¶¶ 116-41).  As for those related to Marina or the Subject Hotel, they are limited to:

- In the introduction to her Complaint, Plaintiff alleges that Marina was "the unfortunate victim of a human sex trafficking venture which was operating out of the ["Subject Hotel"], using a stolen identification and credit card, and suppling drugs to minors to facilitate their commercial sexual exploitation." ***Id.***, p. 1.

- While in high school, Marina became friends with a girl identified as "Z" who "had recruited Marina into the world of human sex trafficking and commercial sexual exploitation". ***Id.***, ¶¶ 34-42.  Plaintiff makes no allegation of when or where this trafficking/exploitation took place.

- During one "runaway" in August of 2019, Plaintiff maintained contact with Marina, via texting and calling, and Marina told her "she was fearful of several men at the hotel".  "Marina's traffickers were operating out of [the Subject Hotel] and using stolen identification and credit cards to secure rooms."  Plaintiff states that Marina's traffickers took photos of her and posted them to a website for sexual services.  Plaintiff also alleges that the advertisement was for "incalls", meaning that "johns would need to come to her room, rather than her to go out to them." ***Id.***, ¶¶ 47-53.  While she does claim that Marina's traffickers operated out of the Subject Hotel, Plaintiff does not allege that Marina was trafficked at the Subject Hotel.  There are no allegations that anyone answered the advertisement that was placed, or, if they did, whether the related commercial sex took place at the Subject Hotel or somewhere else.

- Marina left home again on August 29, 2019.  Marina called Plaintiff on September 12, 2019, saying that "she was at the same hotel in Pompano Beach" and "I just want out.  I can't handle it."  Plaintiff states that she did not know Marina's stress "had to do with human trafficking".  Marina came home that evening. ***Id.***, ¶¶ 63-71.  There are no allegations here that Marina was at the Subject Hotel or, if she was, that was trafficked there.

Sadly, Marina was found dead in room 334 of the Subject Hotel on October 4, 2019.  While Plaintiff contends that the room was rented by a woman (someone other than Marina and other than "Z") on September 30, 2019, using stolen credit cards and a stolen ID, Plaintiff does not specifically contend that this woman was involved in trafficking Marina. ***Id.***, ¶¶ 98-109.  But, even if we are to assume this woman ***was*** involved in trafficking, Plaintiff makes no allegation as to when Marina arrived in the room, what transpired in the room, who Marina saw or interacted

with at the hotel, or what she did leading up to her overdose. The only other allegation regarding activity in room 334 is Plaintiff's contention that "between October 3 and the morning of October 4", two unknown men were going back and forth between the rooms. *Id.*, ¶ 114. But, Plaintiff does not allege that these men were traffickers, "johns", that they had any contact with Marina or that they were somehow involved in Marina's overdose. Plaintiff does not allege that Marina was engaged in commercial sex or trafficked on October 3rd or 4th.[5]

Perhaps more importantly, based on the factual allegations in Plaintiff's Complaint, Marina was involved in a "crime[] involving drug use" (*id.*, ¶¶ 183(b), 207(b)) and died of a drug overdose – not from injuries sustained as a result of trafficking or commercial sex. As noted above, Plaintiff's failure to make factual allegations as to how Defendants' negligence caused Marina's drug overdose is fatal to her claim.

Based on the above, Defendants ESA P. PORTFOLIO L.L.C. and ESA P PORTFOLIO OPERATING LESSEE LLC respectfully request this Court enter GRANT their Motion to Dismiss and DISMISS Plaintiff's claims against them.

---

[5] It is also important to note that Plaintiff has brought a wrongful death claim, wherein she seeks to recover damages allowed under Fla. Stat. 768.16 and associated with Marina's death. *Compl.*, ¶¶ 198, 222. Accordingly, even if Plaintiff had alleged that Marina had been trafficked on prior occasions, such allegations would be irrelevant to the issue of causation. "[T]o state a cause of action for negligence in a wrongful death action, a plaintiff is required to allege … that the breach was a legal or proximate cause of the decedent's death …" *Fritsch v. Rocky Bayou Country Club, Inc.*, 799 So.2d 433, 435 (Fla. 1st DCA 2001) (internal cites omitted).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 9, 2021, a true and correct copy of the forgoing was electronically filed with the Clerk of the Court using CM/ECF. Copies of the forgoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

/s/   *Jose O. De La Cruz*
Heather M. Calhoon, Esq.
Florid Bar No.: 495573
JOSE O. DE LA CRUZ, Esq.
Florida Bar No.: 1005862
3350 Virginia Street, Suite 500
Miami, Florida 33133
Telephone:   (305) 455-9500
Facsimile:   (305) 455-9501
E-Mail:   hcalhoon@wwhgd.com
jdelacruz@wwhgd.com
malvarez@wwhgd.com
dmallqui@wwhgd.com
ahayes@wwhgd.com

*Attorneys for Defendants*

## SERVICE LIST

**Justin D. Grosz, Esq.**
JUSTICE FOR KIDS®
a division of Kelley Kronenberg, P.A.
10360 West State Road 84
Fort Lauderdale, Florida 33324
Telephone:   (754) 888-5437
Facsimile:   (954) 644.4848
E-Mail:   justin@justiceforkids.com
marisela@justiceforkids.com

*Attorneys for Plaintiff*