UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-62276-BLOOM/Valle

CHARITY PEARROW, *as Personal*
*Representative of the Estate of Marina*
*Ralph, a deceased minor*,

        Plaintiff,

v.

ESA P PORTFOLIO L.L.C., *et al.*,

        Defendants.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants Esa P. Portfolio L.L.C. and Esa P

Portfolio Operating Lessee LLC's Motion for Summary Judgment, ECF No. [51] ("Motion"), filed

on December 15, 2022. The Court has carefully reviewed the Motion, all opposing and supporting

submissions,[1] the record in this case, the applicable law, and is otherwise fully advised. For the

reasons set forth below, Defendants' Motion is granted.

### I.    BACKGROUND

This case stems from the tragic death of Marina Ralph, a sixteen-year-old girl who was

found deceased in a hotel room on October 4, 2019. *See* Complaint, ECF No. [1-2] at 1. Marina's

mother, Plaintiff Charity Pearrow, brings this action under Florida's Wrongful Death Act against

Defendants Esa P. Portfolio L.L.C. and Esa P Portfolio Operating Lessee LLC, the entities that

---

[1]Defendants supported their Motion with a Statement of Material Facts ("SMF"), ECF No. [50]. Plaintiff filed a Response to Defendants' Motion, ECF No. [67], along with a Counter Statement of Material Facts, ECF No. [66] ("CSMF"), and a Notice containing 78 exhibits, five of which constituted digital evidence that was filed conventionally. ECF No. [72]. Defendants filed a Reply, ECF No. [88], with a Reply Statement of Material Facts, ECF No. [86] ("RSMF").

operated and controlled the hotel. *Id.* at 3-4.

In their Motion, Defendants argue that Plaintiff's claims are barred by Fla. Stat. 768.075(4) and, regardless, Plaintiff has failed to set forth a claim of negligence against the hotel. ECF No. [51].

## II.    MATERIAL UNDISPUTED FACTS

Unless otherwise stated, the following facts are not in dispute.

On October 4, 2019, Marina Ralph ("Marina") was found deceased in Room 334 of the Extended Stay America Hotel (the "Hotel"), located in Pompano Beach, Florida. SMF ¶ 1; CSMF I ¶ 1.[2] Her death was caused by the "combined acute toxic effects of cocaine and fentanyl." SMF ¶ 26; CSMF I ¶ 26. Marina was sixteen years old at the time of her death. ECF No. [1-2] at 1.

The chain of events leading to Marina's death involve Randall Taylor, a 36-year-old man with a lengthy criminal history. CSMF II ¶ 35; RSMF ¶ 36. Between 2017 and 2020, Taylor ran a criminal enterprise involving fraud, drug dealing, and pimping/prostitution. CSMF II ¶ 36; RSMF ¶ 36. The extent of Taylor's pimping/prostitution operation is disputed by the parties, but it is uncontested that a woman named Samantha Cook worked as a prostitute for him during the summer of 2019. *Id.* Cook testified that, during that time, Taylor was controlling all aspects of her life, and he sometimes prostituted her against her will. CSMF II ¶¶ 45-46; RSMF ¶¶ 45-46. He placed ads on the internet advertising sex with Cook. ECF No. [72-5] at 43. Cook testified that Taylor used Cook's drug addiction to coerce her into prostituting herself, and Taylor took the money she earned. ECF No. [72-5] at 52; SMF ¶ 8; CSMF I ¶ 8.

---

[2] Plaintiff's CSMF contains two sections: (I) Plaintiff's Response to Defendants' SMF; and (II) Plaintiff's Assertion of Additional Material Facts. *See generally* ECF No. [66]. The CSMF's paragraphs numbering restarts at section II.

According to Cook, Taylor would target women he found on the street who were "down and out." ECF No. [72-5] at 11. Taylor would then provide them with free hotel rooms and drugs in exchange for money made from prostituting and fraud. *Id.* at 52; ECF No. [72-4] at 6-9 (deposition of Allyson Tanaka); ECF No. [72-7] at 7 (deposition of Danielle Richardson).

At some point in August or September 2019, Cook and Taylor drove to a gas station that they knew to be a place where drug users gathered. SMF ¶ 13; CSMF I ¶ 13. It is disputed whether they went there "looking for girls to recruit," CSMF II ¶ 50, or "to sell drugs." RSMF ¶ 50. Upon seeing Marina, Taylor told Cook to "call that girl over." CSMF II ¶ 53; RSMF ¶ 53. Cook brought Marina to the car, where Marina and Taylor had a discussion. CSMF II ¶¶ 54-55; RSMF ¶¶ 54-55. They exchanged telephone numbers. SMF ¶ 13; CSMF I ¶ 13. After driving away, Taylor told Cook that he was going to text Marina and he "wanted her to start hanging out with us." CSMF II ¶ 56; RSMF ¶ 56.

Phone records indicate that, between August 16 and August 21, Taylor and Marina were in frequent contact. CSMF II ¶ 59; RSMF ¶ 59; *but see* RSMF ¶ 57 (disputing the authenticity of the phone records). On August 21, a commercial sex ad was posted on a website with Marina's cell phone number, a description of Marina, and a photograph that may or may not have been her. CSMF II ¶¶ 62-63; RSMF ¶¶ 62-63. Phone records indicate that, in the following weeks, Marina received hundreds of texts and calls from men with lengthy criminal histories. CSMF II ¶ 70; RSMF ¶ 70.

Marina's mother, Charity, testified that on August 23, 2021, Marina called her from an unknown number and said that her phone had been taken from her. CSMF II ¶ 65; RSMF ¶ 65. Marina recovered her phone on August 29, 2021. CSMF II ¶ 68; RSMF ¶ 68. Charity testified that Marina called her on September 12 and asked for help, stating that she was at a hotel in Pompano

Beach and wanted a safe place to go. CSMF II ¶ 73; RSMF ¶ 73. Charity offered to pick up Marina immediately, but Marina begged her not to come, saying that it was not safe. CSMF II ¶¶ 73-74; RSMF ¶¶ 73-74.

Marina met her mother at her home and Charity brought Marina Joe DiMaggio Children's Hospital, where she was voluntarily admitted on September 12. CSMF II ¶ 76; RSMF ¶ 76. She told treaters that she was using a variety of illegal drugs, including crack cocaine. ECF No. [72-38] at 49; CSMF II ¶ 77; RSMF ¶ 77. She was discharged on September 18. CSMF II ¶ 78; RSMF ¶ 78.

Phone records reflect that Taylor contacted Marina several times on September 30. CSMF II ¶ 83; RSMF ¶ 83. That evening, Cook arrived at the Extended Stay Hotel in Pompano Beach. CSMF II ¶ 84; RSMF ¶ 84. The parties dispute whether Taylor drove Cook to the Hotel and whether Marina was present with Taylor or Cook that evening. *Id.*

Cook rented two rooms at the Hotel using a stolen driver's license and two fake credit cards, all of which she had obtained from Taylor. SMF ¶¶ 5-6; CSMF I ¶¶ 5-6. The Hotel declined Cook's first credit card but approved the second. CSMF II ¶ 93; RSMF ¶ 93. Cook testified that Taylor wanted Cook and Marina to stay at the Hotel to prevent them from getting "involved . . . with other guys," including other drug dealers. ECF No. [72-5] at 48.

Though the parties dispute whether Marina had previously entered and departed from the Hotel, they agree that Marina entered the Hotel on October 1st. SMF ¶ 12; CSMF I ¶ 12; CSMF II ¶ 104. Cook testified that she gave Marina a key to her room, # 334. SMF ¶ 14; CSMF I ¶ 14.

Around 5:00 a.m. on October 2nd, Taylor arrived at the Hotel with a woman named Kelly McLennan. SMF ¶ 15; CSMF I ¶ 15. They entered together and, according to McLennan, without using a key. CSMF II ¶¶ 110, 113; RSMF ¶¶ 110, 113. McLennan testified that she and Taylor

went to the Hotel to "keep tabs on" Cook and make sure "she didn't have anybody in the room." SMF ¶ 17; CSMF I ¶ 17. McLennan spoke with Cook, whom she previously knew, and Marina, whom she was meeting for the first time. SMF ¶ 16; CSMF I ¶ 16.

Taylor departed alone shortly thereafter, at 5:02 a.m. CSMF II ¶ 114; RSMF ¶ 114. As Taylor was driving away, Cook ran after him. CSMF II ¶ 115; RSMF ¶ 115. According to McLennan, Cook ran after Taylor because he was leaving without giving Cook heroin and Marina crack cocaine. ECF No. [72-6] at 17. It is unclear whether Taylor gave drugs to Cook or Marina at that point. McLennan, Cook, and Marina returned to the hotel. CSMF II ¶ 117; RSMF ¶ 117. According to McLennan, Marina told her that she "was having withdrawals because she didn't have any crack." SMF ¶ 16; CSMF I ¶ 16. McLennan further testified that Marina's behavior was consistent with someone experiencing withdrawal. ECF No. [72-6] at 33.

Marina left the hotel at least once and returned with Cook on October 2 at 7:45 p.m. SMF ¶ 14; CSMF I ¶ 14. Cook further testified that, on the following evening, October 3rd, she and Marina were alone in Room 334, "getting high." SMF ¶ 19; CSMF I ¶ 19. Cook saw Marina smoking crack cocaine in the room. ECF No. [72-5] at 31-32. Cook received a phone call from a commercial sex client requesting her services. *Id.* Cook invited Marina to join her but Marina declined. *Id.* Cook left Marina in the room alone. SMF ¶ 20; CSMF I ¶ 20.

It is unclear when Cook returned to the room. SMF ¶ 21; CSMF I ¶ 21. At 10:04 a.m. on October 4th, Cook called 911 to report that Marina had overdosed on drugs. SMF ¶ 22; CSMF I ¶ 22. Police and fire rescue arrived within fifteen minutes and found Marina's body on the floor against the foot of the bed. SMF ¶ 23; CSMF I ¶ 23. Drug paraphernalia and a white powder were found in the room. SMF ¶ 24; CSMF I ¶ 24. The white powder was not tested to determine if it was a controlled substance. *Id.* According to an autopsy, Marina's cause of death was combined

acute toxic effects of cocaine and fentanyl and the manner of death was accidental. SMF ¶ 26;

RSMF ¶ 26; ECF No. [50-16] at 6 (Autopsy Report).

### III.   LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record,

including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue

is genuine if "a reasonable trier of fact could return judgment for the non-moving party."

*Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect

the outcome of the suit under the governing law." *Id.*

A court views the facts in the light most favorable to the non-moving party, draws "all

reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility

determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see*

*also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving

party's] version of the facts as true and draw all reasonable inferences in the light most favorable

to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-

moving party's] position will be insufficient; there must be evidence on which a jury could

reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one

inference could be construed from the facts by a reasonable fact finder, and that inference

introduces a genuine issue of material fact, then the district court should not grant summary

judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

## IV.   DISCUSSION

Marina's untimely death is indeed tragic. However, this Motion turns on the narrow legal

issue of whether Fla. Stat. 768.075(4) shields a hotel from liability for a drug user's accidental

overdose of a Schedule II controlled substance, when that overdose occurs on the hotel premises.

The Court concludes in the affirmative, and therefore must grant summary judgment in favor of

Defendants.[3]

### A.  Defendants' Assertion of Fla. Stat. 768.075(4)

Fla. Stat. 768.075(4) provides in full:

> A person or organization owning or controlling an interest in real property, or an
> agent of such person or organization, shall not be held liable for negligence that
> results in the death of, injury to, or damage to a person who is attempting to commit
> a felony or who is engaged in the commission of a felony on the property.

Here, Plaintiff's lawsuit seeks to hold the "organization[s] owning or controlling" the Hotel liable

"for negligence that result[ed] in the death of" Marina. *Id.* Accordingly, under the plain terms of

the statute, the Hotel is protected from liability if Marina's death occurred while she was

"attempting to commit a felony or . . . engaged in the commission of a felony on the property." *Id.*

Marina's death was indisputably caused by the "combined acute toxic effects of cocaine

and fentanyl." SMF ¶ 26; CSMF I ¶ 26. Cocaine and fentanyl are Schedule II controlled substances.

*See* Fla. Stat. § 893.03(2)(a)(4) (cocaine and its derivatives); § 893.04(2)(b)(9) (fentanyl). A person

"in actual or constructive possession" of either of those substances "commits a felony of the third

degree[.]" § 893.13(6)(a).

According to Defendants, the uncontroverted facts demonstrate that Marina "sought,

---

[3] Because the Court finds that Fla. Stat. 768.075(4) bars Plaintiff's negligence action, the Court
does not conduct an in-depth analysis of Defendants' remaining arguments as to Plaintiff's supposed failure
to establish the elements of negligence. However, the Court has considered those arguments and finds them
to be without merit. Were it not for Fla. Stat. 768.075(4), the Court would deny Defendants' Motion.

possessed and willingly consumed the drugs that killed her." ECF No. [51] at 8. Since possession

of those drugs is a felony, Defendants contend that Marina was "engaged in the commission of a

felony" at the time of her death, and Fla. Stat. 786.075(4) shields the Hotel from negligence

liability.

### B.   Plaintiff's Arguments in Response

Plaintiff responds with three arguments: (i) There is no affirmative evidence that Marina

was committing a felony; (ii) Marina would have been immune from prosecution under Fla. Stat.

§ 893.21; and (iii) Marina would have been entitled to protection as a victim of human trafficking.

*See* ECF No. [67] at 16-21.

### i.   Evidence of Commission of a Felony

Plaintiff first argues that Defendants failed to produce uncontroverted evidence that Marina

was committing a felony at the Hotel. ECF No. [67] at 16. "The crime of possession of cocaine

requires a showing that (1) the defendant possessed a substance, (2) that substance was cocaine,

and (3) the defendant had knowledge of the presence of the substance." *R.C.R. v. State*, 174 So. 3d

460, 462 (Fla. 4th DCA 2015). "Possession and control . . . need not be exclusive nor of great

duration," and "the quantity possessed is immaterial." *State v. Eckroth*, 238 So. 2d 75, 77 (Fla.

1970). For an individual to possess a substance, she must have "knowledge of the presence of the

substance[.]" *State v. Adkins*, 96 So. 3d 412, 416 (Fla. 2012).

While Plaintiff concedes that Marina's death was caused by an overdose of cocaine and

fentanyl, as evidenced by the positive toxicology screen during her autopsy, she argues that

"[p]ossession charges cannot be substantiated in the absence of any actual controlled substance[.]"

ECF No. [67] at 17-18. Plaintiff has provided no authority for her assertion that a positive

toxicology screening for a controlled substance cannot constitute evidence that the individual

possessed a controlled substance. Courts that have considered this issue have rejected Plaintiff's position. "Certainly, evidence of being identifiably under the influence of a specific drug or other evidence of having introduced it into one's body tends to prove having knowingly, and hence unlawfully, possessed it." *People v. Morales*, 18 P.3d 11, 18 (Cal. 2001); *see also Cronan v. State*, 511 S.E. 2d 899, 903 (Ga. App. 1999) (finding evidence of THC in a defendant's urine constituted evidence of possession). Nevertheless, Plaintiff is correct that evidence of intoxication is not *sufficient* evidence to sustain a drug possession charge, because it possible that the individual ingested the controlled substance accidentally or under duress.[4] *Morales*, 18 P.3d at 18.

Here, however, there is abundant and uncontroverted evidence that Marina was willingly consuming crack cocaine at the Hotel. Cook testified that she witnessed Marina smoke crack cocaine in the room in which she was found. ECF No. [72-5] at 31-32; SMF ¶ 19; CSMF I ¶ 19. McLennan testified that, a day before Marina died, Marina was suffering from withdrawal and appeared desperate to obtain crack cocaine. ECF No. [72-6] at 33; SMF ¶ 16; CSMF I ¶ 16. Marina had previously reported to the treatment providers at Joe DiMaggio Children's Hospital that she was using crack cocaine. ECF No. [72-38] at 49. In sum, the record evidence demonstrates that Marina was willingly ingesting crack cocaine at the Hotel. Willingly ingesting a controlled substance is possessing that substance. *Eckroth*, 238 So. 2d at 77.

Plaintiff argues that there is no evidence that Marina "was even aware of the presence of fentanyl" that may have been mixed with what she thought to be pure crack cocaine. ECF No. [67] at 17. As noted above, a necessary element of possession is that the individual has "knowledge of the presence of the substance[.]"*Adkins*, 96 So. 3d at 416. However, Plaintiff's argument is without merit because Marina's knowing possession of crack cocaine was itself a felony, regardless of the

---

[4] The Court will discuss Plaintiff's duress/coercion argument in subsection (iii), *infra*.

presence of fentanyl. *See Godfrey v. State,* 947 So. 2d 565, 567 (Fla. 2d DCA 2006) (noting that crack cocaine is a cocaine derivative encompassed by Fla. Stat. § 893.03(2)(a)(4)); *see also Kuria v. BMLRW, LLLP*, 101 So. 3d 425, 427 (Fla. 1st DCA 2012) (holding that Fla. Stat. 786.075(4) does not require a causal connection between the felonious activity and the injury suffered).

Lastly, Plaintiff argues that "there is no evidence to indicate how the substances were ingested and the level of narcotics in her system was inconsistent with an intentional overdose." ECF No. [67] at 16. These are not material issues of fact, because neither the manner of her ingestion nor the precise level of narcotics is relevant to the determinative issue of whether she possessed a controlled substance.

The Court agrees with Defendants that the outcome of this case is largely controlled by *Beasley v. Wells Fargo*, No. 22-10659, 2022 WL 17819168 (11th Cir. 2022). In that case, George Beasley, a convicted felon, was shot in the head in a parking lot. *Id*. at *1. While providing medical assistance to Beasley, a firefighter noticed that Beasley had a firearm in his pocket. *Id*. Beasley survived and filed a premises liability action for negligent lighting and security in the parking lot. *Id*. The district court granted summary judgment in favor of the defendants because it found that Beasley's action was barred by Florida Stat. § 768.075(4) due to Beasley's felonious act of being a felon in possession of a firearm. *Id*. at *2.

The Eleventh Circuit affirmed, finding that Beasley had failed to raise a genuine issue of material fact related to his felonious possession of the firearm. *Id*. at *3. Beasley, who had no recollection of the events, argued that the evidence failed to establish that he knowingly possessed the gun, which could have been planted on him while he was unconscious. *Id*. at *1. The Eleventh Circuit rejected Beasley's theory as "merely a 'guess or possibility,' not a reasonable inference from the record." *Id*. at 3 (quoting *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th

Cir. 1982)). Even though the evidence did not "conclusively rule out [the] possibility" that the gun was planted, there was no evidence in the record to "support[ ] a reasonable inference that Beasley was unaware of the gun found on his person." *Id*. Accordingly, Fla. Stat. § 768.075(4) barred Beasley's premises liability action. *Id.*

Here, as in *Beasley*, there are several hypothetical scenarios under which Marina might not have been in knowing possession of drugs on the Hotel premises. For example, it is possible that Marina's ingestion of the drugs was accidental, that someone forcefully injected them into her against her will, or that she consumed the drugs off the Hotel premises. But there is no evidence in the record to support any of these scenarios. The only "reasonable inference from the record" is that Marina was willingly consuming drugs in the Hotel room wherein she was found. *Beasley*, 2022 WL 17819168 at *3. Willingly ingesting a controlled substance is possessing that substance. *Eckroth*, 238 So. 2d at 78. Thus, Marina was in actual possession of the drugs she was consuming, so she was "engaged in the commission of a felony on the property." Fla. Stat. § 768.075(4). Under these circumstances, the Hotel is shielded from liability for Marina's death. *See also Gubanova v. Miami Beach Owner, LLC*, No. 12-cv-22319, 2014 WL 1340988, at *3 (S.D. Fla. Apr. 4, 2014) (finding that Fla. Stat. § 768.075(4) shielded a hotel from liability for the death of a man who was shot while attempting to purchase cocaine in his hotel room).

### ii.  The 911 Good Samaritan Act, Fla. Stat. § 893.21(2)

Next, Plaintiff argues that the primary evidence that Marina was in possession of controlled substances – the positive toxicology result from her autopsy – could not have been used to prosecute her. Plaintiff relies on the "911 Good Samaritan Act," Fla. Stat. § 893.21(2). *See State v. Waiters*, 347 So. 3d 533, 535 (Fla. 2d DCA 2022). Plaintiff argues that the evidence of Marina's overdose was obtained as a result of Cook's 911 call, so Fla. Stat. § 893.21(2) would have

precluded Marina from being arrested, charged, or prosecuted. ECF No. [67] at 19.

Plaintiff's argument would have had some force under the previous version of Fla. Stat.

§ 893.21(2), which Plaintiff quotes in her Response:

> (2) A person who experiences a drug-related overdose and is in need of medical assistance may not be charged, prosecuted, or penalized pursuant to this chapter for possession of a controlled substance if the evidence for possession of a controlled substance was obtained as a result of the overdose and the need for medical assistance.

Under that previous version of the statute, which was in effect until July 1, 2019, it was not

dispositive *who* requested medical assistance for the person experiencing an overdose. *See* Laws

2019, c. 2019-81, § 2. But the current version of Fla. Stat. § 893.21, in effect at the time of Marina's

death in October 2019, protects only the person who seeks medical assistance. *See* Fla. Stat.

§ 893.21(1) (covering those who seek medical assistance on behalf of another person); 893.21(2)

(covering those who seek medical assistance on their own behalf).

It is undisputed that Cook made the 911 call on behalf of Marina. Thus, the current version

of Fla. Stat. § 893.21 could arguably have protected Cook from prosecution, but not Marina.

Moreover, the toxicology report was not created during the provision of "medical assistance," but

rather during an autopsy on Marina's body. *See id.*; *see also State v. Silliman*, 168 So. 3d 245, 247

(Fla. 5th DCA 2015). For those reasons, Fla. Stat. § 893.21 has no bearing on the issue of whether

Marina was in felonious possession of a controlled substance at the Hotel.

### iii.  Coercion and Human Trafficking

Lastly, Plaintiff asserts that Taylor's "modus operandi . . . was to coerce vulnerable women

with drugs to engage in other conduct for his financial benefit, including fraud and commercial

sex." ECF No. [67] at 17. Plaintiff points to Florida's Human Trafficking statute, which defines

"coercion" to include "Providing a controlled substance . . . to any person for the purpose of

exploitation of that person." Fla. Stat. § 787.06(2)(a)(7). Plaintiff's argument appears to contend that the affirmative defense of coercion would have excused Marina's possession of controlled substances. Here, however, there is no record evidence of coercion to support the argument.

Under Florida law, "[c]oercion is a recognized defense to a criminal charge except where an innocent life is taken." *Corujo v. State*, 424 So. 2d 43, 43 (Fla. 2d DCA 1982). "[O]ne may be excused from the commission of a crime if h[er] acts were done under the compulsion or coercion of a real, imminent and impending danger or of what [s]he had reasonable grounds to believe was a real, imminent and impending danger." *Id*. The effect of an affirmative defense is to "legally excuse[ ] the defendant from an act that would otherwise be a criminal offense." *Monsansky v. State*, 33 So. 3d 756, 758 (Fla. 1st DCA 2010). Accordingly, if there is some evidence to suggest that the affirmative defense of coercion applies, the applicability of § 768.075(4) would become a factual question to be resolved by a jury. *See Byers v. Radiant Group, L.L.C.*, 966 So. 2d 506, 511 (Fla. 2d D.C.A.) (Altenbernd, J., concurring) (stating that Fla. Stat. § 768.075(4)'s applicability would depend on a jury's determination as to whether a plaintiff engaged in felonious violence on defendant's premises or acted in self-defense).

Here, however, there is no evidence that Marina possessed controlled substances "under the compulsion or coercion of real, imminent and impending danger[.]" *Corujo*, 424 So. 2d at 43. There is no evidence to suggest, for example, that Taylor or anyone else forced her to possess or ingest the drugs that killed her. The autopsy revealed no evidence that Marina was assaulted or forced to consume anything; her death was deemed an accident. ECF No. [50-16] at 6. As noted above, the only reasonable inference from the uncontroverted evidence is that Marina was willingly using crack cocaine at the Hotel.

The Court is unconvinced by Plaintiff's reliance on Florida's Human Trafficking statute,

which states that "victims of human trafficking are subjected to force, fraud, or coercion," and the Legislature intends to protect such victims. Fla. Stat. § 787.06(1)(a), (d). To the extent Plaintiff is urging the Court to expand Florida's affirmative defense of coercion to incorporate the definition of "coercion" within Fla. Stat. § 787.06(2)(a), the Court declines to do so. Fla. Stat. § 787.06 is a criminal statute defining the types of activity that constitute human trafficking. By the express terms of the statute, its definition of "coercion" is limited to "this section," *i.e.*, the Human Trafficking statute. § 787.06(2).

Relatedly, Plaintiff directs the Court to Fla. Stat. § 943.0583(3), which allows "[a] person who is a victim of human trafficking [to] petition for the expunction of a criminal history record resulting from the arrest or filing of charges for one or more offenses committed or reported to have been committed while the person was a victim of human trafficking[.]" As Defendants correctly point out, that provision merely provides a means for victims of human trafficking to petition for expunction; it "does not confer any right to the expunction . . . , and any request for expunction of a criminal history record may be denied at the discretion of the court." § 943.0583(2). Moreover, the statute is silent about whether a possible victim of human trafficking can be prosecuted in the first place. Although the Court agrees that prosecution of human trafficking victims would be inappropriate in many circumstances, that is ultimately a matter of prosecutorial discretion – an executive branch function – and not an issue for this Court to decide when evaluating whether Fla. Stat. 786.075(4) shields the Hotel from civil liability.

In sum, the Court rejects Plaintiff's argument that Marina was not committing a felony because she was allegedly being coerced by Taylor. ECF No. [67] at 17. This argument conflates Taylor's reason for providing drugs to Marina – an issue that would be relevant in a prosecution of Taylor for human trafficking – with Marina's reason for possessing the drugs – the issue that is

relevant to Marina's intent and the related affirmative defense of coercion. For the reasons explained above, the only reasonable inference from the evidence in record is that Marina possessed the drugs of her own volition, so she was committing a felony pursuant to Fla. Stat. § 893.13(6)(a). Therefore, because Marina was "engaged in the commission of a felony on the property," the Hotel is shielded from liability for her death. Fla. Stat. 768.075(4).

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion for Summary Judgment, **ECF No. [51]**, is **GRANTED**.

2.  A final judgment shall issue by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 6, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

15